# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHYANE GRIFFIN,** | : | No. 3:08cv762 |
| Petitioner | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| **RONNIE R. HOLT,** | : | |
| Respondent | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court is the instant petition for a writ of habeas corpus. Having been briefed, the matter is ripe for disposition.

**Background**

Petitioner is a prisoner at the United States Penitentiary in Waymart, Pennsylvania ("USP Canaan"). Respondent is the warden of that prison. The instant action arises out of discipline imposed on the petitioner.

On November 24, 2007, petitioner made a telephone call to a friend outside the prison. (Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. 2) (hereinafter "Memorandum") at 1). The next day, petitioner was called into the office of a Lieutenant and accused of making a three-way telephone call, which is against prison rules. (Id.). Petitioner contends that on November 24, he placed a call to a friend from a prison telephone. (Id.). Three minutes into the call, a second friend came on the phone line. (Id.). Petitioner asked this friend, who apparently had a cell phone with him, to call a third person, a woman named Jahaira. (Id.). The

friend dialed the number, but the call went to voice mail. (Id.). The friend tried the number again, but the woman still could not be reached. (Id.).

After being accused of making a three-way call, petitioner asked guards to explain what a three-way call was. (Id.). He complains that the definition they provided was inconsistent, since a telephone call to a mother who placed a grandmother on the line was a three-way call, but a telephone call to a mother who placed an inmate's children on the line was not. (Id.). Petitioner thus remained "confused and unsure" about when he violated the three-way call rule, and suspicious that the prison had made "up their own rules and interpretations and definition" of that rule. (Id.). Petitioner contends that no reasonable interpretation of a three-way call would include his call, since he never was on the line with three people at once.

Prison staff prepared a report on this incident. (See Exh. A to Government's Response to Petition for Writ of Habeas Corpus (Doc. 8) (hereinafter "Government's Response")). The report accused plaintiff of engaging in three-way calling during the incident described above. (Id.). It recorded the plaintiff's explanation of his behavior: "I did not know this was a three way call. I just wanted to let [the woman] now [sic] how to unblock the phone." (Id.).

The report also informed the petitioner that the incident was considered serious and staff had "referr[ed] the Charge(s) to the D[iscipline] H[earing] O[fficer] For Further Hearing." (Id.). If the Discipline Hearing Officer ("DHO") concluded that

2

petitioner had committed the act of which he was accused, he faced "all sanctions up to" time in disciplinary housing. (Id.). The report also informed petitioner that the DHO would hold a hearing on a date and time to be determined. (Id.). Plaintiff checked a line that indicated that he did not wish to have either a staff representative or a witness present at the hearing. (Id.).

Plaintiff also received and signed a paper that informed him of his due process rights under the circumstances. The form described his right to a written copy of the charges twenty-four hours before the hearing, to be represented by a full-time staff member, to call witnesses, to speak or be silent, to be present at the hearing, to have written notice of the disposition of the matter, and to appeal through administrative procedures. (Id.). Petitioner signed these documents on November 28, 2007. (Id.).

The DHO conducted the hearing on December 12, 2007. His report noted that petitioner had been provided advanced written notice of the charge on November 25, 2007. (Id.). The report also indicated that petitioner had waived his right to representation in the matter. (Id.). Petitioner made a brief statement to the DHO, claiming that "I did that. I didn't know it was a three-way." (Id.). He did not provide any documentary evidence or witnesses. (Id.). The DHO also noted that he had verbally provided evidence "to the extent believed practical" under prison rules. (Id.). After examining the evidence, the DHO concluded that petitioner had committed the acts for which he was charged. (Id.). "The greater weight of the

evidence" indicated that petitioner "directed one party to contact another party on a separate telephone" and made a second attempt to contact that "third (unapproved) party." (Id.). The DHO rejected petitioner's contention that he was unaware that he had violated prison rules with his actions, since "[a]ll inmates had a responsibility to familiarize themselves and abide by institutional rules and regulations, and this alone would not exculpate his conduct." (Id.).

The DHO sentenced petitioner to fifteen days in disciplinary segregation, which was suspended pending one hundred eighty days of good conduct. (Id.). The prison also disallowed twenty-seven days of good conduct time and revoked petitioner's phone privileges for six months. (Id.). These sanctions were the first that petitioner experienced while in prison. (See Memorandum).

Petitioner complains that his hearing before the DHO was not recorded and no record made. (Id.). In addition, the hearing officer denied petitioner's request that a tape recording of the alleged three-way call be played. (Id.). Neither did anyone at the hearing produce a transcript of the call. (Id.). Petitioner contends that this conduct violated his right to due process. He seeks expungement of the disciplinary report from his record and reversal of all sanctions imposed on him.

Petitioner filed the instant action pursuant to 28 U.S.C. § 2441 on April 24, 2008. (Doc. 1). His petition also included a motion for leave to proceed *in forma pauperis*. (Doc. 3). On June 2, 2008, the court granted plaintiff's *in forma pauperis* motion and ordered the respondent to file a response within thirty days. (Doc. 6).

The government filed its response (Doc. 7) on July 2, 2008.  The petitioner did not file a reply brief within the ten days allotted by the court for such action, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to 28 U.S.C. § 2241(a) because petitioner and his custodian are located within the court's jurisdiction.   See 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."); Yi v. Maugans, 24 F.3d 500, 503 (3d Cir. 1994) (finding that "[a] district court's habeas jurisdiction is territorially limited and extends only to persons detained and custodial officials acting within the boundaries of that district.").

**Discussion**

Petitioner's claim here is that the prison revoked good-time credits and sentenced him to restrictive confinement without due process of law.  Petitioner in part appears to argue that the evidence against him was insufficient to support the DHO's finding.[1]  The Supreme Court has held that "revocation of good time does not comport with 'the minimum requirements of due process,' unless the findings of the

---

[1] The respondent agrees that the petitioner, as required, exhausted his administrative remedies before filing his writ.  See, e.g., Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (finding that "[F]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241.").

prison disciplinary board are supported by some evidence in the record." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454 (1985) (quoting Wolff v. McDonnell, 418 U.S. 539, 565 (1974)).  That standard "is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" Id. at 455 (quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)); see also, Thompson v. Owens, 889 F.2d 500, 501 (1989) (finding that prisoner's due process rights had not been violated when he lost "significant benefits" in prison after urinalysis revealed he had consumed drugs.  Though the prison could not establish a chain of custody for the urine test, the positive test nevertheless met the "some evidence" standard). Federal regulations covering the Bureau of Prisons (BOP) establish a higher standard, requiring that the DHO's decision be "based upon at least some facts" and "based on the greater weight of the evidence" when facts conflict.  28 C.F.R. § 541.17(f); see, e.g., Redding v. Holt, 252 Fed. Appx. 488, 490 (3d Cir. 2007) (finding that plaintiff's § 2241 petition failed because the DHO's conclusion was supported by "the greater weight of the evidence" as required by § 541.17(f)).

    Petitioner argues that the DHO did not have all the evidence he needed to make his decision, since no transcript or recording of petitioner's three-way conversation was introduced at the hearing.  The court rejects this argument. Petitioner does not point to any evidence which contradicts the fact that he was on the phone with three people at once; he claims instead that he did not understand

6

the rule in question. The question for the court in the due process context, then, is whether "some evidence" supported the DHO's decision. Since the DHO had evidence–including the petitioner's admission–that he engaged in such a conversation, the court concludes that the decision was supported by some evidence. The same conclusion would apply using the "based upon at least some facts" standard. Petitioner here admitted that he made the calls as described in the charges against him. That admission provides at least some evidence that petitioner violated prison rules.

Petitioner also received all of the process he was due in the case. The United States Supreme Court has found that prisoners are entitled to due process when they are deprived of good-time credits, as petitioner was here. Wolff, 418 U.S. at 539. Due process in such settings requires that the inmate: (i) appear before an impartial decision-making body; (ii) be given at least 24 hours' written notice of the charges; (iii) be afforded an opportunity to call witnesses and present documentary evidence; (iv) be permitted assistance from an inmate representative; and (v) receive a written decision explaining the decision-maker's conclusion." Anatonakeas v. Sherman, 248 Fed Appx. 295, 297 (3d Cir. 2007) (citing Wolff, 418 U.S. 563-71).

Petitioner does not deny that he appeared before a neutral decision-making body, the DHO, in response to the charges. He does not accuse the DHO of bias. Petitioner also received notice of the charges against him more than twenty-four hours before the hearing. He signed a form that detailed the charges on November

7

25, 2007. The DHO held his hearing on December 12, 2007. At the hearing, petitioner had the opportunity to call witnesses on his behalf, though he declined. Respondent offered petitioner a representative at the hearing, which he also declined. Finally, petitioner received a written explanation of the DHO's decision. Petitioner therefore received all the process he was due.

Petitioner also appears to argue that the regulation which he was accused of violating is unconstitutionally vague. "Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." Myers v. Allredge, 492 F.2d 296, 310 (3d Cir. 1974). Because of the unique nature of prisons, "'[p]risoners, unlike free men, must well know that they are considered potentially dangerous men and must expect to be highly regimented. In such cases the law requires less in the way of notice, and places a greater burden on the individual to make inquiry or ask permission before acting.'" Id. at 311 (quoting Landman v. Royster, 333 F.Supp. 621, 655-656 (E.D. Va. 1971)).

The prison regulation here in question makes an offense of "[U]se of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code). (Exh. B to Respondent's Brief). The

8

Inmate Information Handbook for the Canaan prison also states that "[t]hree-way telephone calls are strictly prohibited." (Exh. C to Respondent's Brief at ¶ 22F.).

The court finds that these prison regulations are not so vague as to violate plaintiff's due process rights. These regulations inform a prisoner making a telephone call that a third party is not allowed on the line. Calls are genuinely placed between two persons. A reasonable prisoner would have to know that if he speaks to a person to whom he did not place the call, he is speaking to a third party and has violated the regulation. Such regulations are not vague, and would clearly not be void even in the heightened demands required in the criminal law context. See, e.g., U.S. v. Goldin, 42 Fed. Appx. 547, 550 (3d Cir. 2002) (finding that "'[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.") (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). The court therefore rejects petitioner's claim that the regulation violated his due process rights.[2]

**Conclusion**

Because the actions of prison officials did not violate petitioner's due process rights, the court will deny the instant petition for a writ of habeas corpus. An

---

[2] Here, the court notes that not only did petitioner talk to a person to whom he was not originally connected, but he had that third party call a fourth party from another phone while on the line with him.

appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHYANE GRIFFIN, | : | No. 3:08cv762 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| RONNIE R. HOLT, | : | |
| Respondent | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 29th day of September 2008, the instant petition for a writ of habeas corpus (Doc. 1) is hereby **DENIED**. The Clerk of Court is directed to **CLOSE** the case.

                                             **BY THE COURT:**

                                             **s/ James M. Munley**
                                             **JUDGE JAMES M. MUNLEY**
                                             **UNITED STATES DISTRICT COURT**